# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent

vs.                                     No. CIV 19-1201 JB\CG
                                            No. CR 95-0014 JB

  SEBASTIAN LEIGH ECCLESTON,

        Defendant/Petitioner.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, filed December 20, 2019 (Civ. Doc. 1)("Motion"). The primary issue is whether Defendant and Petitioner Sebastian Leigh Eccleston's 18 U.S.C. § 924(c) conviction, in 1996, for using a firearm during a crime of violence is properly predicated on a crime of violence in light of United States v. Davis, 139 S. Ct. 2319 (2019), in which the Supreme Court of the United States of America held that § 924(c)'s residual clause is unconstitutionally vague. The Court concludes that Eccleston was convicted of a crime which necessarily has an element of violence such that his § 924(c) conviction is based on a proper predicate. Accordingly, the Court denies the Motion.

## FACTUAL BACKGROUND

The Court takes its facts from the Presentence Report. On December 15, 1994, Eccleston and his codefendant, Ronald Marvin Martinez, were in a Motel 6 Parking lot in Albuquerque, New Mexico, when they confronted Robert Boyle as he was exiting his car. See PSR ¶ 9, at 3. Martinez approached Boyle, "racked the action of a shotgun, pointed the weapon at the victim's head and ordered him out of the vehicle." PSR ¶ 9, at 3. Boyle heard another sound towards the car's rear that he "associated with a firearm being chambered" and, when Boyle turned, he saw Eccleston

pointing a second firearm at him.  PSR ¶ 9, at 3.  After Boyle fled, Eccleston and Martinez both got into Boyle's car and drove away.  See PSR ¶ 9, at 3.

Shortly thereafter, Albuquerque Police Department ("APD") officers responded to an armed-robbery call at another Albuquerque motel.  See PSR ¶ 10, at 3.  The victims, David Henkemeyer and Karen Kuepers, told police that they were in the motel's parking lot when a white car with two passengers approached them and demanded their money.  See PSR ¶ 10, at 3. Henkemeyer later identified Eccleston and said that Eccleston held and pointed a firearm at Kuepers as Eccleston took her purse, and at Henkemeyer as Eccleston took his wallet.  See PSR ¶ 10, at 4.

While APD officers were taking the armed robbery report, Bernalillo County Sheriff's Office ("BCSO") deputies attempted to stop a vehicle that matched Henkemeyer's description of Martinez and Eccleston's vehicle.  See PSR ¶ 11, at 4.  After a "high speed pursuit," the vehicle crashed, and the occupants fled.  PSR ¶ 11, at 4.  BCSO deputies apprehended Martinez, but Eccleston escaped.  See PSR ¶ 11, at 4.  APD officers took all three robbery victims to the crash site, where the victims "positively identified the vehicle" and found some of their property in the vehicle.  PSR ¶ 11, at 4.  BCSO deputies found a shotgun and eight twelve-gauge shotgun rounds in the crashed vehicle.  See PSR ¶ 12, at 4.  Boyle also positively identified Martinez.  See PSR ¶ 12, at 4.  Federal agents later interviewed the sales manager for the dealership that sold the car that Martinez and Eccleston stole, and the sales manager confirmed that the vehicle was not manufactured in the State of New Mexico.  See PSR ¶ 15, at 5.

A federal Grand Jury issued a ten-count Second Superseding Indictment on July 6, 1995. See Second Superseding Indictment at 1, filed July 7, 1995 (Cr. Doc. 34)("Indictment").  The Indictment charges Eccleston with: (i) carjacking in violation of 18 U.S.C. § 2119(1), and aiding

and abetting carjacking in violation of 18 U.S.C. § 2; (ii) three counts of using and carrying a firearm during the carjacking in violation of 18 U.S.C. § 924(c); (iii) five counts of interference with commerce by threats of violence against Boyle in violation of 18 U.S.C. 1951(a), and aiding and abetting the interference in violation of 18 U.S.C. § 2; and (iv) against Martinez only, possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5485(a)(2). See PSR ¶ 3, at 2.

On May 3, 1996, Eccleston pled guilty to four counts: (i) carjacking in violation of 18 U.S.C. § 2119(1), and aiding and abetting in violation of 18 U.S.C. § 2; (ii) "us[ing and carry[ing] a firearm . . . during and in relation to a crime of violence," carjacking, in violation of 18 U.S.C. §§ 924(c) and 2119(1), and aiding and abetting in violation of 18 U.S.C. § 2; (iii) "obstruct[ing], delay[ing] and affect[ing], and attempt[ing] and conspir[ing] to obstruct, delay and affect commerce . . . by robbery . . . in that [Eccleston] did unlawfully take and obtain personal property" from Karen Kuepers "by means of actual and threatened violence, and fear of injury, in violation of 18 U.S.C. 1951(a) and aiding and abetting in violation of 18 U.S.C. 2"; and (iv) "us[ing[ and carry[ing] a firearm . . . during and in relation to a crime of violence," in violation of 18 U.S.C. §§ 1951(a) and 924(c) and aiding and abetting in violation of 18 U.S.C. § 2.  Plea Agreement ¶ 7, at 4-5, filed May 3, 1996 (Cr. Doc. 70).  See PSR ¶ 3, at 2.

## PROCEDURAL HISTORY

After sentencing, Eccleston extensively litigated this case in both direct and collateral appeals.[1]  The Court summarizes those aspects of this case's procedural history that are relevant

---

[1]The Honorable Robert Brack, Senior United States District Judge for the United States District Court for the District of New Mexico, recently summarized Eccleston's litigation while denying Eccleston's motion to correct manifest injustice:

to Eccleston's Motion.  The PSR, his sentencing, and the United States Court of Appeals for the Tenth Circuit's review of Eccleston's sentence all bear on the issue at hand: whether, in light of Davis v. United States, Eccleston's Count V Hobbs Act conviction is a crime a violence such that Eccleston's conviction and sentence for Count VI is constitutional.

1.      **The Plea Hearing.**

On May 3, 1996, the Honorable LeRoy Hansen, then-United States District Judge for the United States District Court for the District of New Mexico, accepted Eccleston's Plea Agreement. See Transcript of Proceedings at 1:1 (taken May 3, 1996), filed September 29, 1996 (Cr. Doc. 279)("Plea Tr.").  After ensuring that Eccleston reviewed and understood the Plea Agreement, Judge Hansen stated:

---

On May 4, 2001, Eccleston filed his first motion to vacate or correct sentence pursuant to 28 U.S.C. § 2255.  (CR Doc. 93); Eccleston v. United States, 01-CV-00500-LH-WD.  Eccleston argued his federal sentences should run concurrently with his state sentence for murder.  The Court dismissed his federal § 2255 motion because it was barred by the one-year statute of limitations. (CR Doc. 96.)  In 2003, Eccleston attempted to raise the same concurrent-sentence argument in a 28 U.S.C. § 2254 habeas petition.  See Eccleston v. Master, 03-cv-00406 BB-DJS.  However, that proceeding was also dismissed as time-barred. (Docs. 19; 21 in 03-cv-00406 BB-DJS.)

Between 2009 and 2014, Eccleston filed at least five petitions in the Tenth Circuit seeking permission to file a second or successive § 2255 motion.  See In re Eccleston, No. 09-2022 (10th Cir. Jan. 23, 2009); In Re Eccleston, No. 10-2231 (10th Cir. Oct. 26, 2010); In re: Sebastian L. Eccleston, No. 10-2256 (10th Cir. Nov. 30, 2010); In re: Eccleston, No. 11-2215 (10th Cir. Nov. 1, 2011); In re Eccleston, No. 14-2092 (10th Cir. June 5, 2014).  Some motions were construed under 28 U.S.C. § 2241, see, e.g., No. 09-2022, but regardless of the construction, each motion was denied.  Id.  Eccleston also filed various motions in this Court under § 2255 and 18 U.S.C. § 3582.  (CR Docs. 212; 218; 252.)  To date, the Court has refused to alter his sentence.  (CR Doc. 255.)

Eccleston v. United States, No. CIV 19-538 RB\CG, 2020 WL 953792, at *1 (D.N.M. Feb. 27, 2020)(Brack, J.).

> [T]he government has an obligation to prove . . . that on or about December 15th, 1994, in Albuquerque, . . . New Mexico, that you . . . did unlawfully, in Count V, obstruct, delay, and affect and attempt and conspire to delay, and affect commerce as that term is defined in 18 U.S. Code, Section 1951, and the movement of articles and commodities in such commerce by robbery, as that term is defined therein that you did unlawfully take and obtain personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from the person and in the presence of Karen Kuepers against her will by means of actual and threatened force, violence, and fear of injury, immediate and future, to her person and a person in her company, that is, the threat that if Karen Kuepers did not give defendant property, you were going to injure or kill her and David Henkemeyer, and in Count VI that you did use and carry a firearm made from a Remington Shotgun . . . , which weapon as modified has a barrel of less than 18 inches in length, during and in relation to a crime of violence for which you may be prosecuted in a court of the United States, namely, the charge in Count V that I have reviewed with you.

Plea Tr. at 10:10-11:20 (Hansen, J.).  Eccleston responded that, after the carjacking, the car did not have any gas, so he

> went to another motel, and that's where I got out with a pistol and held up a lady and a guy and asked them for the guy's wallet and the lady's purse and -- but I didn't have a Remington shotgun in my possession as it says here.  I had a pistol, an automatic pistol.  And that's what happened.  That's what I'm pleading to.

Plea Tr. at 12:10-15 (Eccleston).  Judge Hansen then asked Eccleston if he "did take, then, the personal property from the two people at the second motel?"  Plea Tr. at 13:19-20 (Hansen, J.). Eccleston responded affirmatively.  See Plea Tr. at 13:22 (Eccleston).

Judge Hansen then asked the United States what it would prove at trial.  See Plea Tr. at 14:3 (Hansen, J.).  The United States responded that it could prove at trial that, about a half-hour after the carjacking,

> two Oregon residents, . . . Kuepers and . . . Henkemeyer, were robbed at gun point in the parking lot of another motel.  Ms. Kuepers had an individual identified as Mr. Martinez, Mr. Eccleston's co-defendant, come up to her, point a sawed-off shotgun at her, chamber a[ ]round once again and take her purse, telling her to give him her purse.  The second individual, who, in this case, was positively identified as Mr. Eccleston, went up to Ms. Kuepers' companion, Mr. Henkemeyer, took his wallet at gunpoint at the same time that his companion and co-defendant, Mr. Martinez, got back into the white rental car and drove off.

- 5 -

Plea Tr. at 14:24-15:11 (Kimball).  The United States continued: "For all of these reasons, the United States contends that we could prove that Mr. Eccleston either committed or aided and abetted in the commission of these crimes within the meaning of Section 2 of Title 18, United States Code."  Plea Tr. at 16:15-19 (Kimball).  Eccleston agreed with the United States' characterization of the offenses.  See Plea Tr. at 16:20-22 (Hansen, J; Eccleston).  Eccleston then pled guilty to Counts I, II, V, and VI.  See Plea Tr. at 16:23-25 (Hansen, J.; Eccleston).  Judge Hansen accepted Eccleston's guilty plea.  See Plea Tr. at 17:9 (Hansen, J.).

### 2.  The PSR.

The United States Probation Office ("USPO") calculated Eccleston's base offense level as 27 and his criminal history category as III, resulting in a United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") imprisonment range of 87 to 108 months.  See PSR ¶¶ 80-90, at 19.  The USPO noted, however, that, as to Count II, there was a mandatory 120-month consecutive sentence, and, as to Count VI, there was a mandatory 240-month consecutive sentence, because Count V is Eccleston's second or successive conviction for using a firearm during a crime of violence.  See PSR ¶ 88, at 19.  Accordingly, a thirty-year period of imprisonment would have run consecutively to the Guidelines range, thus establishing a Guidelines range of 447 to 468 months.  See PSR ¶ 88, at 19.

### 3.  The Objections.

Eccleston objected to the PSR's calculation of the § 924(c) mandatory consecutive sentences.  See Defendant Eccleston's Objections to Pre-Sentence Report and Supporting Memorandum of Points and Authorities at 1, filed August 28, 1996 (Cr. Doc. 79)("Objections").  Eccleston first clarified that he did not object to the information that the PSR contains, and he

acknowledged that, "[g]iven caselaw and the posture of this case, . . . the [USPO] Officer preparing the report could have arrived at no other conclusion." Objections at 1. Eccleston contended, however, that "recent Supreme Court caselaw compels a reexamination of previous Tenth Circuit caselaw regarding sentencing on the Section 924(c) Counts." Objections at 1. As for his § 924(c) conviction regarding the carjacking offense as Count II charges, Eccleston stated that Martinez used a shotgun to effect the carjacking and that Eccleston was an "accessary to the carjacking by Martinez, and that he used a firearm." Objections at 2. Relying on <u>Bailey v. United States</u>, 516 U.S. 137 (1995), Eccleston maintained that, if he did not use or actively employ a sawed-off shotgun during and in relation to the carjacking, he may not be sentenced to the ten-year mandatory minimum under 18 U.S.C. § 924(c)(1). <u>See</u> Objections at 2 (citing 18 U.S.C. § 924(c)(1)).[2] Eccleston asserted, alternatively, that, if his Count II conviction "is pursuant to accessory liability," his Count VI § 924(c) conviction "may be construed as a second or subsequent conviction for sentencing purposes." Objections at 3. To support this argument, Eccleston distinguished <u>Deal v. United States</u>, 508 U.S. 129 (1993), and <u>United States v. Abreu</u>, 962 F.2d 1447 (10th Cir. 1992), by asserting that the defendants in those case were principals rather than accessories. <u>See</u> Objections at 3. Eccleston thus asserted that, if he "used" a pistol in the carjacking, he should

---

[2]In 1996, § 924(c)(1) provided:

> Whoever, during and in relation to any crime of violence . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . , be sentenced to imprisonment for five years, and if the firearm is a . . . short-barreled shotgun . . . , to imprisonment for ten years. . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.

18 U.S.C. § 924(c)(1) (1996).

"receive a five year, not a ten year, enhancement pursuant to the Count II conviction." Objections at 3-4. Eccleston alternatively argued that, if his Count II conviction is founded on accessory liability and for use of a sawed-off shotgun, "this factual dissimilarity from <u>Deal</u> would permit this court to distinguish the facts in <u>Deal</u> and find that Defendant's conviction of Count VI is a first conviction and not subject to the twenty-year mandatory sentence, but to the five-year sentence for another first conviction." Objections at 4.

> If, in order for § 924(c)(1) liability to attach, the defendant must actively employ a firearm, and if Defendant Eccleston did not actively employ the shotgun but was convicted of such employment as an accessory to Martinez' active employment, it is a violation of due process to sentence him to the enhanced "second or subsequent conviction" penalty of § 924(c)(1) in light of the <u>Bailey[ v. United States]</u> test.

Objections at 4 (quoting 18 U.S.C. § 924(c)(1).

### 4.    **The Sentencing.**

On October 29, 1996, Judge Hansen sentenced Eccleston. <u>See</u> Transcript of Proceedings at 3:2 (taken October 29, 1996)(Hansen, J.), filed February 5, 1997 (Cr. Doc. 267)("Sentencing Tr."). Eccleston did not object to the PSR's factual findings but rather maintained his § 924(c) argument. <u>See</u> Sentencing Tr. at 3:3-8 (Hansen, J.; Eccleston; Storment). Eccleston acknowledged, however, "that, . . . given the state of the case law, this Court can[not] do anything other than what was recommended in the presentence report as to the 924(c) counts." Sentencing Tr. at 7:3-6 (Storment). The United States responded that Martinez' racking and brandishing the shotgun at Boyle "fits exactly the talk about brandishing or using a firearm that is in the <u>Bailey</u> decision." Sentencing Tr. at 7:5-7 (Kimball). The United States further asserted that, "while [Martinez] was holding a gun on these people, [Eccleston] was aiding and abetting his action, first in carjacking the car from Mr. Boyle, and second, in stealing the belongings of the two tourists[.]" Sentencing Tr. at 7:6-9 (Kimball). The United States thus argued that, "even after <u>Bailey</u>, when

you're talking about using a firearm, you're still subject to the penalties of 924(c) if you aid and abet somebody who used a firearm and you knew it."  Sentencing Tr. at 8:16-19 (Kimball).  The United States asserted that Eccleston admitted to knowing about the firearms, thus satisfying the United States' asserted knowledge test for aiding and abetting.  See Sentencing Tr. at 8:22-24 (Kimball).

Judge Hansen then accepted the PSR's factual findings and concluded that, as to Counts I and V, the Guidelines imprisonment range is 57 to 71 months, and that mandatory sentences of 127 months and 240 months applied to Counts II and VI, respectively.  See Sentencing Tr. at 13:6-9 (Hansen, J.).  Judge Hansen applied these latter sentences to run consecutively to each other and to the Counts I and V sentences.  See Sentencing Tr. at 13:9-11 (Hansen, J.).  Judge Hansen took "further judicial notice that the defendant committed two separate violent acts while armed with a handgun."  Sentencing Tr. at 13:13-15 (Hansen, J.).  Judge Hansen then sentenced Eccleston to 417 months imprisonment.  See Sentencing Tr. at 14:4-5 (Hansen, J.).[3]

**5.    The Direct Appeal.**

The Tenth Circuit affirmed Eccleston's sentence.  See United States v. Eccleston, 132 F.3d 43, 1997 WL 774758, at *1 (10th Cir. 1997)(unpublished table opinion).  Eccleston's primary argument was that he was not subject to the mandatory ten-year sentence for Count II for using or

---

[3]Although not referenced at the sentencing hearing, the Tenth Circuit has concluded that Eccleston's federal sentence runs consecutively with a state life sentence for first degree murder. See United States v. Eccleston, 545 F. App'x 774, 775 (10th Cir. 2013)(unpublished), as amended on denial of reh'g and reh'g en banc (Dec. 20, 2013).  Although Judge Hansen issued Eccleston's federal sentence before Eccleston received his state sentence, the State of New Mexico had primary jurisdiction over Eccleston, because it was first to take him into custody following his arrest.  See United States v. Eccleston, 545 F. App'x at 775.  Eccleston is thus serving a state sentence of life imprisonment plus nine years, consecutively to his federal sentence, for a murder that Eccleston committed the day before the federal offense at issue in this Motion.  See United States v. Eccleston, 545 F. App'x at 775, 777.

carrying a sawed-off shotgun in relation to a crime of violence, because, as an accomplice, he did not actively employ the shotgun.  See United States v. Eccleston, 1997 WL 774758, at *1.  The Tenth Circuit rejected Eccleston's argument and concluded that the caselaw provided no support for Eccleston's argument.  See 1997 WL 774758, at *1.  Eccleston also argued that Judge Hansen erred in applying the mandatory twenty-year sentence for Count VI, because the same Indictment charges both the predicate § 924(c) violation -- Count I -- and the successive § 924(c) violation -- Count V -- and because the Indictment charges him only as an accessory in the predicate § 924(c) violation.  See 1997 WL 774758, at *2.  The Tenth Circuit also rejected this argument, relying on Deal v. United States and United States v. Abreu.  See 1997 WL 774758, at *2.  The Tenth Circuit noted that, in Deal v. United States, the Supreme Court held that district courts may apply the mandatory twenty-year sentence for the second or subsequent § 924(c) violation "even though the first sentence has not become final."  1997 WL 774758, at *2.[4]  The Tenth Circuit also disagreed with Eccleston's accessory argument, noting that 18 U.S.C. § 2 provides that accessories may be punished as principals.  See 1997 WL 774758, at *2.  The Tenth Circuit thus affirmed Eccleston's sentence.  See 1997 WL 774758, at *3.

6.     **The Motion.**[5]

Eccleston first contends that the Supreme Court, in Davis v. United States, held that § 924(c)(3)(B) is unconstitutionally vague.  See Motion at 2 (citing Davis v. United States, 139 S.

---

[4]In 2018, Congress amended § 924(c) to provide that the twenty-year minimum applies only when the predicate § 924(c) conviction has already "become final," such that the Tenth Circuit's statement no longer correctly describes § 924(c) prosecutions.  Pub. L. No. 115-391, § 403(a), 132 Stat. 5221.

[5]On October 25, 2019, the Tenth Circuit, based on the United States' stipulation, granted Eccleston leave to file a second or successive § 2255 motion.  See Order at 1, filed October 25, 2019 (Cr. Doc. 299).

- 10 -

Ct. at 2336).  Eccleston further notes that the Tenth Circuit has determined that United States v. Davis' holding "'is a new constitutional rule that is retroactive on collateral review.'"  Motion at 2 (quoting United States v. Bowen, 936 F.3d 1091, 1097-98 (10th Cir. 2019)).  Eccleston thus contends that his conviction for Count VI "may be sustained only if the crime of violence on which it is predicated 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"  Motion at 3 (quoting 18 U.S.C. § 924(c)(3)(A)).  Eccleston avers that Count VI "referred to three separate crimes, one of which is no longer a constitutionally valid predicate," and so the Court must vacate Eccleston's conviction on Count VI, because the record does not disclose with certainty the crime to which Count VI refers.  Motion at 3.

Eccleston contends that the Court should apply the modified categorical approach to determine whether Count VI is permissibly predicated on a crime of violence, because the statutory violation that Count VI charges is "divisible."  Motion at 3.  Eccleston asserts that, under this approach, the reviewing court "'looks to a limited class of documents (for example, the indictment, jury instructions or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of.'"  Motion at 3 (quoting Mathis v. United States, 136 S. Ct. 2243, 2249 (2016)).  Eccleston avers, however, that the modified categorical approach restricts the Court's assessment to Count VI's elements rather than to the facts on which Count VI is based.  See Motion at 3-4 (citing Descamps v. United States, 570 U.S. 254, 262-63 (2013)).  Eccleston further contends that, under the modified categorical approach, "a court cannot lawfully make a crime of violence determination unless the limited class of available documents establish with 'certainty' that the defendant 'necessarily' pled guilty to elements constituting a crime of violence."  Motion at 4 (quoting Shepard v. United States, 544 U.S. 13, 21 (2005)).

- 11 -

Eccleston argues that Count VI could be predicated on conspiracy to commit robbery as the Hobbs Act, 18 U.S.C. § 1951, defines. See Motion at 4. Eccleston notes that Count V, which is Count VI's predicate offense, charges Eccleston with unlawfully "obstruct[ing] delay[ing] and affect[ing], and attempt[ing] and conspir[ing] to obstruct, delay and affect commerce[.]" Motion at 4(quoting Indictment ¶ 5, at 3)(emphasis and alterations in Motion but not in Indictment). Eccleston accordingly asserts that Count VI charges him with three separate crimes: (i) "substantive" Hobbs Act robbery; (ii) attempt to commit Hobbs Act robbery; and (iii) conspiracy to commit Hobbs Act robbery. Motion at 4 (citing United States v. Washington, 653 1251, 1263 n.12 (10th Cir. 2011)("[W]hen the government uses both the terms conspiracy and attempt in a single count [alleging a Hobbs Act violation], it has improperly charged two separate offenses in the same count."); United States v. Starks, 515 F.2d 112, 116 (3d Cir. 1975); United States v. Silva, 889 F.3d 704, 717 (10th Cir. 2018)).

Eccleston acknowledges that Hobbs Act robbery and attempted Hobbs Act robbery are "categorically" crimes of violence. Motion at 5 (citing United States v. Melgar-Cabrera, 892 F.3d 1053, 1065-66 (10th Cir. 2018)). Eccleston asserts, however, that conspiracy to commit Hobbs Act robbery "does not categorically fall within § 924(c)(3)(A)'s definition of a crime of violence." Motion at 5 (citing United States v. Brown, 942 F.3d 1069, 1075 (11th Cir. 2019)(concluding that conspiracy to commit Hobbs Act robbery is not a crime of violence as § 924(c)(3)(A) defines)). Eccleston avers that the relevant documents -- namely, the PSR and the Plea Agreement -- do not indicate "with certainty" the precise crime on which Count VI relies. Motion at 5-6 (citing Plea Agreement ¶ 4(c), at 4 ("'On or about December 15, 1994, . . . the defendant . . . did unlawfully obstruct, delay and affect, and attempt and conspire to obstruct delay and affect commerce . . . by robbery[.]'" (emphasis in Motion but not in Plea Agreement))). Eccleston avers that, when both

- 12 -

the Indictment and the Plea Agreement allege facts that "could potentially describe a completed robbery, they do not preclude a conspiracy."  Motion at 6 (citing United States v. Horse Looking, 828 F.3d 744, 748 (8th Cir. 2016)("'The plea colloquy establishes that Horse Looking *could have been* convicted [of a valid predicate,] . . . [b]ut the colloquy does not exclude the possibility that Horse Looking was convicted [of an invalid predicate.]'" (emphasis and alterations in Motion and not in United States v. Horse Looking))).  Eccleston further asserts that the proper inquiry focuses not on whether a defendant admitted facts that could support a crime of violence, but rather whether the record documents indicate that the conviction's statutory offense is a crime of violence.  See Motion at 6 (citing United States v. Kennedy, 881 F.3d 14, 21 (1st Cir. 2018)).  Eccleston thus asserts that, while the record could support a valid conviction for a crime of violence, "what is missing here 'is *any specificity* as to which offense was charged and admitted.'"  Motion at 6 (quoting United States v. Kennedy, 881 F.3d at 21 (emphasis in Motion and not in United States v. Kennedy)).  Eccleston avers that this "'elements-focus avoids unfairness to defendants,'" so the Court must assume that he pled guilty to "'the least serious' of the disjunctive elements of the statute.'"  Motion at 6-7 (first quoting Mathis v. United States, 136 S. Ct at 2253, and then quoting United States v. Chapman, 666 F.3d 220, 228 (4th Cir. 2012)).  Eccleston accordingly avers that, under the modified categorical approach, the Court should conclude that Eccleston pled guilty to using and carrying a firearm during and in relation to conspiring to commit Hobbs Act robbery.  See Motion at 7.  Because conspiracy to commit Hobbs Act robbery "only qualifies as a crime of violence under the now defunct residual clause found at § 924(c)(3)(B), and not under the still valid force-clause found at § 924(c)(3)(A)," Eccleston contends that the Court must vacate his conviction for Count VI.  Motion at 7 (quotation marks omitted).

7.     **The Response**.

The United States responds.  <u>See</u> United States' Response to Petitioner's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255 at 1, filed April 17, 2020 (Civ. Doc. 11)("Response"). The United States asserts that Eccleston must prove that it "'was more likely than not' that a sentencing court relied on the now defunct residual clause at sentencing."  Response at 3 (quoting <u>United States v. Driscoll</u>, 892 F.3d 1127, 1138 (10th Cir. 2018), and citing <u>Rodella v. United States</u>, __ F. Supp. 3d __, 2020 WL l406389, at *11 (D.N.M. Jan. 23, 2020)(Browning, J.)).  The United States contends that, if the record is ambiguous, the Court should: (i) look at the sentencing record to confirm that there is no mention of § 924(c)'s residual clause; and (ii) examine the "'relevant background legal environment' at the time of sentencing to determine whether the district would   have *needed* to rely on the residual clause."   Response at 4 (emphasis in Response)(quoting <u>United States v. Driscoll</u>, 892 F.3d at 1132).

The United States agrees with Eccleston that conspiracy to commit Hobbs Act robbery is not a crime of violence.  <u>See</u> Response at 4 (citing <u>Brown v. United States</u>, 942 F.3d at 1075-76). The United States also agrees that § 1951, which defines Hobbs Act Robbery, is divisible, but the United States attributes this divisibility to the statute's prohibition of both robbery and extortion. <u>See</u> Response at 5 (citing 18 U.S.C. § 1951; <u>United States v. O'Connor</u>, 874 F.3d 1147, 1152 (10th Cir. 2017)).  The United States also agrees with Eccleston that the Court should use the modified categorical approach.  <u>See</u> Response at 6.

The United States avers that Eccleston was not convicted of conspiracy to commit Hobbs Act robbery.  <u>See</u> Response at 6.  The United States first asserts that conspiracy "requires additional evidence to include the existence of an agreement."  Response at 6 (citing <u>United States v. Brown</u>, 942 F.3d at 1075).  The United States acknowledges that the Indictment and the Plea Agreement

refer to conspiracy, because both "incorporate the entire charging language of 18 U.S.C. § 1951(a)."  Response at 7.  The United States contends, however, that both the Plea Agreement and the PSR specify that Eccleston either committed Hobbs Act robbery or aided and abetted Hobbs Act robbery.  See Response at 7.  The United States further argues that the Plea Agreement and the PSR are "completely devoid of any specific language as to what would be required for an offense for Conspiracy to Commit Hobbs Act Robbery," such as allegations of agreement or of a conspiracy's objective.  Response at 7-8.  Instead, the United States asserts that the Indictment and the Plea Agreement "contain[] the necessary element of substantive Hobbs Act Robbery: actual and threatened force, violence, and fear of injury."  Response at 8 (emphasis omitted).  The United States notes that, at the plea hearing, Eccleston told Judge Hansen that Eccleston committed the robbery that Count V alleges.  See Response at 8.  The United States further says that Judge Hansen did not ask Eccleston about an agreement "or otherwise . . . elicit details relating to elements specific to Conspiracy to Commit Hobs Act Robbery," and that the United States did not characterize Eccleston's offense as conspiracy.  Response at 8.  The United States thus avers that the record does not support that Eccleston was convicted of conspiracy to commit Hobbs Act robbery or that Eccleston's conviction "relied upon" § 924(c)'s residual clause.  Response at 9. Accordingly, the United States asks that the Court deny the Motion.  See Response at 9.

**8.    The Reply.**

Eccleston replies.  See Reply to United States' Response to Petitioner's Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, filed May 8, 2020 (Civ. Doc. 14)("Reply").  Eccleston first asserts that United States v. Driscoll "and its progeny" are inapposite.  Reply at 1.  Eccleston asserts that United States v. Driscoll provides that a defendant "'must prove that the sentencing court, more likely than not relied on the residual clause to enhance his sentence under the'" Armed

Career Criminal Act, 18 U.S.C. § 924(e) (2012) ("ACCA").  Reply at 1 (quoting United States v. Driscoll, 892 F.3d at 1135).  Eccleston asserts that "such a rule makes sense when the question is what prior conviction a district court relied on in determining a defendant's sentence," but that "it has no bearing where the issue is, as here, what crime was the defendant actually convicted of[.]"  Reply at 1 (citing United States v. Wilfong, 733 F. App'x 920, 926 (10th Cir. 2018)(unpublished)).  Eccleston acknowledges that the Court relied on United States v. Driscoll in deciding a similar §2255 petition in Rodella v. United States, 2020 WL 406389, at *11, but Eccleston argues that "this analysis erroneously conflates two distinct concepts."  Reply at 2.  Eccleston asserts, "on the one hand," that § 924(e) is not a criminal statute for which a defendant may be charged and convicted, but rather § 924(e) provides a sentencing enhancement where a defendant is convicted of a separate, relevant offense.  Reply at 2.  Eccleston avers that, in that situation, a sentencing court determines whether a defendant's previous conviction of a separate crime triggers the ACCA enhancement.  See Reply at 3.  Eccleston argues, "on the other hand," that § 924(c) "is a distinct crime for which a defendant may be substantively charged and convicted."  Reply at 2 (citing United States v. Armour, 840 F.3d. 904, 907 (7th Cir. 2016)("Armour was not sentenced under the ACCA enhancement under § 924(e) but was convicted under . . .§ 924(c)(1)(A).")).  Eccleston contends that, in that situation, "there is nothing for the sentencing court [to] decide or rely on -- if convicted of a § 924(c) charge . . . , the sentencing court must sentence the defendant" to the appropriate consecutive sentence.  Reply at 2.  Eccleston thus asserts that, here, the issue is not whether Judge Hansen relied on the residual clause when sentencing Eccleston, but rather "simply whether the predicate crime of violence underlying his § 924(c) conviction is valid after United States v. Davis."  Reply at 2.  Eccleston argues, in the alternative, that he satisfies the rule from United States v. Driscoll, because the record is ambiguous as to what crime serves as the predicate

for his § 924(c) conviction, and this "ambiguity does not meet the Supreme Court's requirement of certainty."  Reply at 3.

      Eccleston next maintains that the Court should grant the Motion using the modified categorical approach.  See Reply at 3.  Eccleston notes the United States' agreement that the modified categorical test is proper here, but Eccleston asserts that the United States "ignores precedent repeatedly cautioning courts that the analysis is narrow and carefully circumscribed." Reply at 3.  Eccleston contends that, under the modified categorical test, courts must determine not what the defendant and the sentencing judge understood as the plea's factual basis, but rather "'only to assess'" whether the defendant pled guilty to a valid predicate offense.  Reply at 3 (quoting United States v. Descamps, 570 U.S. at 263)(emphasis in Reply but not in United States v. Descamps).  Eccleston contends that the modified categorical approach serves solely to identify the predicate conviction's elements when a statute's disjunctive phrasing renders those elements opaque, and that the modified categorical approach is not a means to identify whether the predicate conviction rests on facts that could satisfy a valid offense's elements.  See Reply at 3 (citing Mathis v. United States, 136 S. Ct. at 2253-54; United States v. Titties, 852 F.3d 1257, 1266 (10th Cir. 2017)).  Eccleston contends that this approach avoids unfairness to the defendant, because, at "'trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law.'"  Reply at 4 (quoting Mathis v. United States, 136 S. Ct. at 2253).  Eccleston contends that the United States, in the Response, contravenes the modified categorical approach by looking at the sentencing record to determine the facts underlying Eccleston's conviction and not to see if the record sets forth Count V's elements.  See Reply at 4.

      Eccleston instead "maintains that, analyzed correctly, it is impossible to determine with the certainty required . . . whether his § 924(c) conviction rested on a valid or invalid predicate"

offense.  Reply at 4 (citing <u>Sherpard v. United States</u>, 544 U.S. 13 (2005); <u>Taylor v. United States</u>, 495 U.S. 575 (1990)).  Eccleston avers that each of the documents on which <u>Shepard v. United States</u> permits the Court to rely in the modified categorical approach refers to conspiracy to commit Hobbs Act robbery.  <u>See</u> Reply at 4 (citing Indictment ¶ 5, at 3 (charging Eccleston, in part, with conspiracy to commit Hobbs Act robbery); Plea Agreement ¶ 7(c), at 4 (admitting, in part, to conspiracy to commit Hobbs Act robbery)).  Eccleston also notes that the Plea Agreement does not list each admitted offense's elements, and Eccleston asserts that this omission further obscures the offense to which he pled.  <u>See</u> Reply at 4.  Eccleston further notes that, at the plea colloquy, Judge Hansen lists conspiracy to commit Hobbs Act robbery among other Hobbs Act offenses, and that Judge Hansen did not "inform Mr. Eccleston of the specific elements of the crime to which he was pleading guilty."  Reply at 4-5 (citing Plea Tr. at 10:20-11:8 (Hansen, J.)).  Eccleston thus contends that, because the record does not establish the elements of the Count V offense to which Eccleston pled guilty, it is impossible to determine with certainty whether Count VI is based on a valid predicate offense.  <u>See</u> Reply at 5.

Eccleston maintains that this impossibility remains even if the Court considers the brute facts that the Indictment alleges or that the parties and Judge Hansen discussed at the plea hearing. <u>See</u> Reply at 5.  Eccleston says that, while the facts set forth in the PSR and the Plea Agreement "might, as a factual matter, establish that Mr. Eccleston committed substantive Hobbs Act robbery, they equally establish that he conspired with another to commit that crime."  Reply at 5.  To support this argument, Eccleston says that, at the Plea Hearing, the parties and Judge Hansen discussed Eccleston and Martinez' "interaction and interdependence," rendering the "fact of a conspiracy . . . equally apparent as . . . any substantive robbery."  Reply at 5 (citing <u>United States v. Weidner</u>, 437 F.3d 1023, 1033 (10th Cir. 2006)("[C]onspiracy convictions may be based on circumstantial

evidence, and the jury may infer conspiracy from the defendant's conduct and other circumstantial evidence indicating coordination and concert of action."); United States v. Pulido-Jacobo, 377 F.3d 1124, 1129 (10th Cir. 2004)(noting that an agreement may be informal and "inferred entirely from circumstantial evidence")).  Eccleston accordingly maintains that the United States is mistaken in its assertion that "the factual basis provided at the plea hearing 'was wholly devoid of any reference to an agreement or to a conspiracy.'"  Reply at 5-6 (quoting Response at 8).  Eccleston avers, instead, that the facts to which Eccleston admitted at the plea hearing are "just as 'consistent and germane' to a conspiracy to commit a Hobbs Act robbery as they are to a substantive Hobbs Act robbery."  Reply at 6 (quoting United States v. Kennedy, 881 F.3d at 23, and citing United States v. Horse Looking, 828 F.3d at 748 ("But the colloquy does not exclude the possibility that Horse Looking was convicted" of an invalid predicate)).  Eccleston thus asserts that the Court should grant the Motion.

## LAW REGARDING 28 U.S.C. § 2255

Eccleston seeks collateral review of his sentence under 28 U.S.C. § 2255.  See Motion at 1. Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  The defendant is to file the initial motion under 28 U.S.C. § 2255 with the court that imposed the sentence for that court's consideration.  See Browning v. United States, 241 F.3d 1262, 1264 (10th Cir. 2001).  Rule 4(b) of the Rules Governing Section 2255 Proceedings states:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

Rules Governing Habeas Proceedings 4(b). Section 2255 provides that a United States Court of Appeals panel must certify a second or successive motion in accordance with § 2244 to contain: (i) newly discovered evidence that would be sufficient to establish by clear-and-convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (ii) a new rule of constitutional law that was previously unavailable and the Supreme Court made retroactive to cases on collateral review. See 28 U.S.C. § 2255(h). Section 2244 requires that, before a second or successive application is filed in the district court, the applicant shall move the appropriate court of appeals for an order authorizing the district court to consider the application. See 28 U.S.C. § 2244(b)(3)(A). A district court lacks jurisdiction to consider a second or successive motion absent the requisite authorization. Here, the Tenth Circuit has certified Eccleston's Motion such that the Court has jurisdiction. See Certification Order at 1.

## LAW REGARDING 18 U.S.C. § 924

Section 924 of Title 18 of the United States Code provides penalties for crimes of violence involving firearms. Section 924(c)(1)(A) states that

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime --
>
> > (i)   be sentenced to a term of imprisonment of not less than 5 years;

> (ii)      if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (ii)      if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years[.]

18 U.S.C. § 924(c)(1)(A).  The statute provides the definition for "crime of violence":

> (3)      For purposes of this subsection the term "crime of violence" means an offense that is a felony and --
>
> (A)      has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)      that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Courts have titled the first clause, 18 U.S.C. § 924(c)(3)(A), the "elements clause," and the second clause, 18 U.S.C. § 924(c)(3)(B), the "residual clause."  E.g. United States v. Davis, 139 S. Ct. at 2325.  Because the residual clause is "almost identical" to clauses in related statutes, United States v. Davis, 139 S. Ct. at 2325 (discussing the similarity between the residual clauses in the Armed Career Criminal Act and the Immigration and Nationality Act), courts have interpreted these clauses in a consistent manner, see United States v. Davis, 139 S. Ct. at 2329 (stating that "the same language in related statutes carries a consistent meaning").  The key similar features are "an ordinary-case requirement and an ill-defined risk threshold -- combined in the same constitutionally problematic way."  Sessions v. Dimaya, 138 S. Ct. 1204, 1207 (2018).

The Tenth Circuit generally uses the "categorical approach"[6] when deciding whether a predicate offense qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(b), as long as the

---

[6]The categorical approach is not without critics.  The approach's focus on statutory convictions rather than on actual conduct has led some judges to characterize it as a "judicial charade," Ovalles v. United States, 905 F.3d 1231, 1253 (11th Cir. 2018)(Pryor, J., concurring),

---

and note that the categorical approach "require[s] that judges ignore the real world," United States v. Chapman, 866 F.3d 129, 136 (3d Cir. 2017)(Jordan, J., concurring). Justice Thomas recently called the approach "an absurdity." Quarles v. United States, 139 S. Ct. 1872, 1880 (2019)(Thomas, J., concurring). The Honorable J. Harvie Wilkinson, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, described the categorical approach as "a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence," United States v. Doctor, 842 F.3d 306, 313 (4th Cir. 2016)(Wilkinson, J., concurring), and pleads: "Heaven help us," United States v. McCollum, 885 F.3d 300, 314 (4th Cir. 2018)(Wilkinson, J., dissenting).

Although Justice Alito has described the categorical approach as a recent judicial invention, see Chambers v. United States, 555 U.S. 122, 132 (2009)(Alito, J., concurring)("[O]nly Congress can rescue the federal courts from the mire into which . . . [United States v. Taylor, 495 U.S. 575 (1990)]'s 'categorical approach' have pushed us."), the interpretive canon dates at least to 1891, when Congress provided that noncitizens were removable on the basis of criminal conviction involving moral turpitude, see Act of Mar. 3, 1891, ch. 551, § 1, 26 Stat. 1084, 1084. Courts interpreted this provision as requiring examination not of an offense's facts, but rather of the statute of conviction. See, e.g., United States ex rel. Guarino v. Uhl, 107 F.2d 399, 400 (2d Cir. 1939)("[D]eporting officials may not consider the particular conduct for which the [noncitizen] has been convicted."); United States ex rel. Mylius v. Uhl, 210 F. 860, 863 (2d Cir. 1914)(explaining that whether a crime involves moral turpitude "must be determined from the judgment of conviction and not from the testimony adduced at the trial"); Alina Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N.Y.U. L. Rev. 1669, 1689 (2011). Further, the categorical approach's proponents note that Congress typically requires the categorical approach in relevant statutes. See United States v. Davis, 139 S. Ct. at 2328 ( "It's not even close; the statutory text commands the categorical approach."); Mathis v. United States, 136 S. Ct. at 2552; Taylor v. United States, 495 U.S. at 600-01. Finally, the Supreme Court says that the categorical approach avoids practical challenges in reviewing, as is the case here, decades-old conviction records. See Moncrieffe v. Holder, 569 U.S. 184, 200-01 (2013).

> The factual approach . . . would transform the sentencing hearing into a series of mini-trials in which the defendant rehashes his version of the events that led to his predicate convictions and the prosecution searches for stale evidence to prove an element that was necessarily proved or admitted at the prior proceeding.

United States v. Wilson, 951 F.2d 586, 590 (4th Cir. 1991). Similarly, two defendants with identical conduct could face very different sentencing results depending on the detail that each's sentencing record provides.

The Supreme Court has also held that the categorical approach safeguards constitutional interests: the Sixth Amendment to the Constitution of the United States of America generally prohibits the sentencing judge from determining facts underlying a prior conviction to determine a sentencing enhancement's applicability, because "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction." Mathis v. United States, 136 S. Ct. at 2252. The categorical approach thus requires that prior-conviction

statute of conviction is indivisible.  United States v. Melgar-Cabrera, 892 F.3d at 1061.  See United

States v. Bowen, 936 F.3d at 1102.  When the court uses the categorical approach to determine

whether the predicate act is a crime of violence, the court looks "'only to the fact of conviction

and the statutory definition of the prior offense, and do not generally consider the particular facts

disclosed by the record of conviction.'"  United States v. Bowen, 936 F.3d at 1102 (quoting United

States v. Serafin, 562 F.3d 1105, 1107-08 (10th Cir. 2009))(quotations omitted in original).  The

Supreme Court has described elements as that which the prosecution must necessarily prove at

trial or to which the defendant must plead "'to sustain a conviction.'"  Mathis v. United States, 136

S. Ct. at 2248 (quoting Black's Law Dictionary at 634 (10th ed. 2014)).  Alternatively, the Supreme

Court has described facts, in the categorical context, as "mere real-world things -- extraneous to

the crime's legal requirements . . . .  They are 'circumstance[s]' or 'event[s]' having no 'legal

effect [or] consequence'" that "need neither be found by a jury nor admitted by a defendant."

Mathis v. United States, 136 S. Ct. at 2248 (quoting Black's Law Dictionary at 709))(alterations

---

enhancements rest on legally defined predicate convictions.  See Mathis v. United States, 136 S.
Ct. at 2252.  The Supreme Court has also noted that the approach safeguards rights to fair notice
that the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution
guarantee, see Mathis v. United States, 136 S. Ct. at 2253, because, "at the time that a defendant
decides to plead guilty to a [predicate] crime, the defendant would likely have no real notice of the
potentially severe federal consequences of a decision not to challenge the [government's]
characterization of the defendant's underlying conduct," United States v. Faust, 853 F.3d 39, 64
(1st Cir. 2017)(Barron, J., concurring).  Accordingly, the categorical approach may, in some
instances, yield absurd results, but the Supreme Court has concluded that those results are the
cost of achieving the best systemic outcome.
        Nonetheless, it is evident that the categorical approach subverts Congressional intent to
enhance sentences for repeat, violent offenders, even where it is clear that a defendant's predicate
conviction factually rests on a violent crime.  The categorical approach invites post hoc
counterfactuals that allow judges to vacate sentences that are clearly based on violent crimes.  "The
upshot of this 'counterintuitive' exercise, see Mathis, 136 S. Ct. at 2251, is that the categorical
approach can serve as a protracted ruse for paradoxically finding even the worst and most violent
offenses not to constitute crimes of violence."  United States v. Doctor, 842 F.3d at 313
(Wilkinson, J., concurring).

in <u>Mathis v. United States</u>).  Using the categorical approach, the court compares the "scope of conduct covered by the elements of the crime" with the statute's "'definition of crime of violence.'"  <u>United States v. O'Connor</u>, 874 F.3d at 1151 (quoting U.S.S.G. § 4B1.2(a)).

"Some statutes, however, have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder. . . .  A single statute may list elements in the alternative, and thereby define multiple crimes."  <u>Mathis v. United States</u>, 136 S. Ct. at 2249.  The court must modify the categorical approach "in a narrow range of cases where the statute of conviction is divisible" -- meaning that the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  <u>United States v. Pam</u>, 867 F.3d 1191, 1203 (10th Cir. 2017)(citing <u>Descamps v. United States</u>, 133 S. Ct. at 2281).  If the statute is divisible, this "modified categorical approach" allows the court to "consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative [crimes] formed the basis of the prior conviction."  <u>United States v. Titties</u>, 852 F.3d at 1266.  Once identified, the Court "compares those elements" of the alternative crime to the statute's definition of "crime of violence" as it would under the categorical approach.  <u>United States v. Titties</u>, 852 F.3d at 1266 (quoting <u>Descamps v. United States</u>, 133 S. Ct. at 2281).  <u>See</u> <u>United States v. Henry</u>, No. CR 11-2660 JB, 2017 WL 6729963, at *4 (D.N.M. Dec. 31, 2017)(Browning, J.).

The reviewing court must decide the statutory provision on which the sentencing court relied for conviction.  <u>See</u> United <u>States v. Driscoll</u>, 892 F.3d at 1135.  The Tenth Circuit has stated that the movant carries the burden at the merits stage of the movant's first § 2255 challenge to prove that it is "'more likely than not'" that the sentencing court used the residual clause as the

basis of sentencing.  See United States v. Driscoll, 892 F.3d at 1135 (quoting from and adopting

the test of Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017)).[7]

---

[7]Eccleston argues that United States v. Driscoll is inapposite.  See Reply at 1.  Eccleston asserts, instead, that, although United States v. Driscoll provides that the defendant holds the burden of demonstrating that the sentencing court relied on an impermissible statute in a § 2255 collateral proceeding, "such a rule . . . has no bearing where the issue is, as here, what crime was the defendant actually convicted of[.]"  Reply at 1.  The Court previously relied on United States v. Driscoll in Rodella v. United States.  See 2020 WL 406389, at *11 n.6.  There, the Court stated:

> Although the Tenth Circuit announced this rule in a Johnson v. United States, __ U.S. __, 135 S. Ct. 2551(2015), challenge, the Tenth Circuit has treated both the Johnson v. United States and United States v. Davis residual clauses interchangeably, so the Court treats the challenges to those clauses using law applicable to both clauses.

Rodella v. United States, 2020 WL 406389, at *11 n.6.  Eccleston acknowledges the Court's reliance on United States v. Driscoll but states that

> this analysis erroneously conflates two distinct concepts.  On the one hand, the ACCA, found at § 924(e), is not a criminal statute for which a defendant may be charged and convicted; rather, it is a statute providing for an enhanced sentence when a defendant is convicted of a, separate, § 922(g) charge.  Section 924(c), on the other hand, is a distinct crime for which a defendant may be substantively charged and convicted.

Reply at 2.  The Court explained, on the defendant's motion for a certificate of appealability in Rodella v. United States, No. CV 19-0275 JB/CG, 2020 WL 1495752, at *1 (D.N.M. Mar. 27, 2020)(Browning, J.), that there is a "Court of Appeals split regarding a 28 U.S.C. § 2255 petitioner's burden of proof," but that Tenth Circuit precedent binds the Court, 2020 WL 1495752, at *1, *7.  The Tenth Circuit has established that a petitioner has the burden to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 motion.  See In re Moore, 830 F.3d 1268, 1273 (11th Cir. 2016)(collecting cases from the United States Courts of Appeals for the First, Second, Fourth, Fifth, Eighth, and Seventh Circuits).  The Tenth Circuit has "required movants to show something more" than some other courts to bring a Johnson v. United States claim.  United States v. Taylor, 873 F.3d 476, 480 (5th Cir. 2017)(citing United State v. Snyder, 871 F.3d 1122, 1129 (10th Cir. 2017)).  The preponderance-of-the-evidence standard requires the petitioner to demonstrate that he or she is entitled to relief in a 28 U.S.C. § 2255 proceeding.  The preponderance-of-the-evidence standard for United States v. Davis claims, therefore, is consistent with the petitioner's burden of proof in Tenth Circuit Johnson v. United States cases and in other 28 U.S.C. § 2255 cases in other courts.

Eccleston notes, however, that the issue here is whether Eccleston's Count V predicate conviction rests on aiding and abetting or substantive Hobbs Act robbery rather than on conspiring

---

to commit Hobbs Act robbery.  See Reply at 1-2.  Eccleston avers that the burden of proof that United States v. Driscoll assigns "makes sense when the question is what prior conviction a district court relied on in determining a sentence," but Eccleston contends that this burden allocation is inapposite in the Court's determination of the crime to which Eccleston pled guilty in Count V. Reply at 1-2.  Removing this burden aids Eccleston, because it entitles him to relief if it is impossible to determine the crime to which he pled guilty.  See, e.g., United States v. Chapman, 666 F.3d at 228 ("[W]hen a defendant pleads guilty to a formal charge in the indictment which alleges conjunctively the disjunctive elements of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct.").  Alternatively, if Eccleston holds the burden of proof, he is not entitled to relief unless he can demonstrate, by a preponderance of the evidence, that he pled guilty to conspiracy to commit Hobbs Act robbery, and not to substantive or aiding and abetting Hobbs Act robbery.  See United States v. Driscoll, 892 F.3d at 113 (adopting the rule that "'the movant must show that -- more likely than not -- it was use of the residual clause that led to the sentencing court's enhancement of his sentence.'" (quoting Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017))).

     In United States v. Driscoll, the Tenth Circuit adopted the United States Court of Appeals for the Eleventh Circuit's rule that the petitioner must prove, "at the merits stage of a first § 2255 challenge," that it is "'more likely than not [that] it was use of the residual clause that led to the sentencing court's enhancement of his sentence.'"  United States v. Driscoll, 892 F.3d at 1135 (quoting Beeman v. United States, 871 F.3d at 1222).  As a preliminary matter, a § 2255 petitioner generally holds the burden of demonstrating that he or she is entitled to relief, see United States v. Snyder, 871 F.3d at 1127 (noting that § 2255 petitioners hold the burden to demonstrate actual prejudice), but that does not necessarily mean that the petitioner "bears the specific burden of showing that the district court relied only on the residual clause in finding that the Section 924(c)(1)(A) violation was based on a statutorily designated predicate offense," Mannie v. United States, No. 3:19-CV-00632, 2020 WL 1923229, at *5 n.8 (M.D. Tenn. Apr. 21, 2020)(Richardson, J.).  The Tenth Circuit does not appear to have ruled on the petitioner's precise burden when asserting error under United States v. Davis, so the Court has relied on the Tenth Circuit's decisions that analyze § 2255 petitions asserting error under analogous Supreme Court precedent.  See Rodella v. United States, 2020 WL 406389, at *11 n.6 (asserting that the Tenth Circuit treats "both the Johnson v. United States and United States v. Davis residual clauses interchangeably, so the Court treats the challenges to those clauses using law applicable to both clauses").  The Tenth Circuit's treatment of challenges under analogous Supreme Court precedent does not support Eccleston's argument that a different standard applies here.  See, e.g., United States v. Snyder, 871 F.3d 1122, 1129 (10th Cir. 2017)(addressing a challenge under Johnson v. United States); United States v. Taylor, 873 F.3d 476, 480 (5th Cir. 2017)(citing United States v. Snyder and stating that the Tenth Circuit has "required movants to show something more" than some other courts to bring a Johnson v. United States claim).

     Some courts have concluded, on policy grounds, that requiring a § 2255 petitioner to prove by a preponderance of the evidence that a court relied on a particular § 924 clause could undermine the categorical approach's goals of fairness and determinacy, because results will vary depending on the conviction and sentencing documents' specificity.  See Thrower v. United States, 234 F. Supp. 3d 372, 378 (E.D.N.Y. 2017)(Ross, J.), rev'd on other grounds, 914 F.3d 770 (2d Cir. 2019), cert. denied, 140 S. Ct. 305 (2019)("Adopting the government's position regarding Thrower's

burden of proof would mean that Thrower's petition would fail simply because I did not, during the sentencing proceeding, specify on which ACCA clauses I was relying."). Similarly, "in cases such as this, where the Defendant received his sentence before <u>Johnson</u> and its progeny, applying the Government's proposed rule would be to require § 2255 movants to a hope that the judge sentenced them according to a standard that did not yet exist." <u>United States v. Lewis</u>, No. 10-CR-622 (ADS), 2020 WL 2797519, at *7 (E.D.N.Y. May 22, 2020)(Spatt, J.). See <u>United States v. Thrower</u>, 234 F. Supp. at 378 ("This was simply not an issue at the time, when neither I nor the parties could have predicted that one of the clauses would be found unconstitutional seven years later.").

The Court concludes, however, that Tenth Circuit precedent requires Eccleston -- and any § 2255 petitioner asserting error under <u>United States v. Davis</u> -- to prove that it is more likely than not that his § 924(c) conviction rests on an invalid predicate. The Court thus maintains its conclusion in <u>Rodella v. United States</u> that there is no reason that the Tenth Circuit would apply a more lenient standard to § 2255 petitions asserting error under <u>United States v. Davis</u>, but the Court adds an additional, procedural reason specific to Eccleston's petition. First, the Tenth Circuit adopted the Eleventh Circuit's reasoning from <u>Beeman v. United States</u> that § 2255 petitioners asserting error under <u>Johnson v. United States</u> must show that the sentencing court probably relied on § 924(e)'s residual clause. See <u>United States v. Driscoll</u>, 892 F.3d at 1135 (citing <u>Beeman v. United States</u>, 871 F.3d at 1222). District courts in the Eleventh Circuit have since concluded that <u>United States v. Beeman</u> applies to petitioners asserting error under <u>United States v. Davis</u>. See, e.g., <u>Martinez v. United States</u>, No. 19-CV-796 FTM/NPM, 2020 WL 2839442, at *4 (M.D. Fla. June 1, 2020)(Steele, J.). There is little substantive difference between courts' review of an error under <u>Johnson v. United States</u> and <u>United States v. Davis</u>, because both require the reviewing court to determine, using either the categorical approach or the modified categorical approach, whether the defendant's § 924 conviction is validly predicated on a crime of violence. See <u>Johnson v. United States</u>, 135 S. Ct. at 2556-57; <u>United States v. Davis</u>, 139 S. Ct. at 2336. Most importantly, the Tenth Circuit in <u>United States v. Washington</u>, 890 F.3d 891 (10th Cir. 2018), adopted <u>United States v. Beeman</u>'s articulation of a § 2255 movant's burden on a second or successive § 2255 petition. See <u>United States v. Washington</u>, 890 F.3d at 896. In a second or successive § 2255 motion, "there are procedural hurdles not present when filing a first § 2255 motion." <u>United States v. Driscoll</u>, 982 F.3d at 1135 n.5. First, the defendant must make a prima facie showing that his or her petition relies on a new rule of constitutional law. See <u>United States v. Washington</u>, 890 F.3d at 894-95. Second, the "defendant must back up the prima facie showing with actual evidence to show he can meet this standard." <u>United States v. Washington</u>, 890 F.3d at 895 (quotations and ellipsis omitted). In <u>United States v. Washington</u>, the Tenth Circuit adopted <u>United States v. Beeman</u>'s burden formulation that a petitioner mounting a second or successive § 2255 motion must show with actual evidence that the sentencing court probably relied on an invalid residual clause. See <u>United States v. Washington</u>, 890 F.3d at 896. In <u>United States v. Driscoll</u>, the Tenth Circuit extended <u>United States v. Washington</u>'s adoption of <u>United States v. Beeman</u>'s burden formulation to initial § 2255 motions. Thus, it is unlikely that a different standard would apply here in Eccleston's successive § 2255 motion that asserts error similar to that which the Tenth Circuit reviewed in <u>United States v. Driscoll</u>. Accordingly, Eccleston must demonstrate that it is more likely than not that Count VI is impermissibly predicated on conspiracy to commit Hobbs Act robbery. Finally, the Court maintains its

## ANALYSIS

The Court first concludes that Count V alleges a divisible violation, so the Court employs the modified categorical approach in reviewing the Motion. The Court then concludes that Count VI is predicated upon aiding and abetting Hobbs Act robbery or substantive Hobbs Act robbery. Because either qualifies as a crime of violence, Eccleston's sentence for Count VI is based on a permissible predicate. Accordingly, the Court denies the Motion.

## I.   COUNT V IS DIVISIBLE, SO THE COURT USES THE MODIFIED CATEGORICAL APPROACH.

The Court first determines that Hobbs Act robbery is divisible. The Court then determines that conspiracy to commit Hobbs Act robbery is not categorically a crime of violence. In line with Tenth Circuit guidance, the Court's "first task" is to determine whether Count V and its § 1951 allegation are divisible. United States v. Titties, 852 F.3d at 1269 (explaining that "[t]he Supreme Court requires us to begin the analysis . . . at the means/elements inquiry")(citing Mathis v. United States, 136 S. Ct. at 2256. A divisible statute sets out one or more elements of an offense in the alternative. See Descamps v. United States, 570 U.S. at 257. Count V alleges that, on December 15, 1994,

> Eccleston and [Martinez] did unlawfully obstruct delay and affect, and attempt and conspire to obstruct, delay and affect commerce as that term is defined in [18 U.S.C. § 1951], and the movement of articles and commodities in such commerce, by robbery as that term is defined in [18 U.S.C. § 1951], in that the defendants, [Eccleston and Martinez], did unlawfully take and obtains personal property consisting of jewelry, personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from the person and in the presence of Karen Kuepers against her will by means of actual and threatened force, violence,

---

conclusion in Rodella v. United States that this standard does not result in unfairness. The Court disagrees that this standard would result in inequities. "Precisely the opposite: it is imposing a uniform rule," and that "the burden is less friendly to petitioners" "does not make it unequal." Dimott v. United States, 881 F.3d 232, 242 (1st Cir. 2018). See Rodella v. United States, 2020 WL 1495752, at *8.

and fear of injury, immediate and future, to her person and a person in her company, that is, the treat that if Karen Kuepers would not give defendants . . . [her] property, the defendants . . . were going to injure or kill Karen Kuepers and David C. Henkemeyer.

Indictment ¶ 5, at 3-4. Eccleston contends that the Indictment impermissibly sets out various alternative Hobbs Act offenses. See Motion at 4. An indictment is duplicitous if it conjunctively charges two or more offenses in the same count. See United States v. Haber, 251 F.3d 881, 888 (10th Cir. 2001). "'The dangers of duplicity are three-fold: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence.'" United States v. Trammell, 133 F.3d 1343, 1354 (10th Cir. 1998)(quoting United States v. Wiles, 102 F.3d 1043, 1061 (10th Cir. 1996)). The Tenth Circuit has indicated, in dictum, that, "when the government uses both the terms conspiracy and attempt in a single [Hobbs Act] count, it has improperly charged two separate offenses in the same count -- i.e., that the count is duplicitous." United States v. Washington, 653 F.3d 1251, 1263 n.12 (10th Cir. 2011). It is the Indictment's language in Count V that generates this case's disagreement, as Eccleston contends that the Indictment's reference to both substantive and attempted Hobbs Act robbery and conspiracy to commit Hobbs Act robbery renders it impossible to determine Eccleston's Count V conviction. See Motion at 4; Reply at 3.

The categorical approach, however, requires that the Court examine first the statute of conviction. See, e.g., United States v. Bowen, 936 F.3d at 1102. The Hobbs Act makes conduct unlawful which "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion." 18 U.S.C. § 1951(a). The Hobbs Act provides:

(a)     Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b)     As used in this section --

(1)     The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2)     The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3)     The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

18 U.S.C. § 1951 (1996). Whereas the Hobbs Act provides disjunctive elements, the Indictment provides conjunctive elements. That is, § 1951(a) provides for at least three separate robbery offenses: robbery, attempted robbery, or conspiracy to commit robbery. See 18 U.S.C. § 1951(a) ("Whoever in any way or degree obstructs . . . commerce . . . by robbery or extortion or attempts or conspires . . ."). The Indictment, however, alleges that Eccleston "did unlawfully obstruct . . . and attempt and conspire to obstruct . . . commerce . . . by robbery[.]" Indictment ¶ 5, at 3-4. The Tenth Circuit has described it as "hornbook law that a crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive."

United States v. Powell, 226 F.3d 1181, 1192 (10th Cir. 2000)(quoting United States v. Gunter, 546 F.2d 861, 868-69 (10th Cir. 1976)).[8]  Accordingly, although the Indictment's phrasing gives rise to the parties' reasonable disagreement, the Indictment does not necessarily duplicitously allege a Hobbs Act violation.

Courts have reached differing conclusions regarding whether § 1951 is divisible, because the Hobbs Act "contains both divisible and indivisible provisions."  United States v. Hancock, 168 F. Supp. 3d 817, 820 (D. Md. 2016)(Hazel, J.).  Courts agree that the Hobbs Act is divisible, but this conclusion typically follows from the Hobbs Act's application to both robbery and extortion. See United States v. O'Connor, 874 F.3d at 1152; United States v. Gooch, 850 F.3d 285, 291 (6th Cir. 2017)("That different portions of § 1951(b) provide the distinct elements of robbery and extortion suggests the statute is divisible.); United States v. Hancock, 168 F. Supp. 3d at 820-21. Conversely, other courts have concluded that Hobbs Act robbery is not divisible.  See, e.g., United States v. Elvin Hill, 890 F.3d 51, 55-56 (2d Cir. 2018), cert. denied, 139 S. Ct. 844 (2019).  As the Honorable Jennifer Dorsey, United States District Judge for the United States District Court for the District of Nevada, put it:

---

[8]Other Courts of Appeals that have considered this issue are in accord.  See United States v. Coriaty, 300 F.3d 244, 250 (2d Cir. 2002)("The general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.")(quoting Turner v. United States, 396 U.S. 398, 420 (1970)(international quotation marks omitted)); United States v. Arlt, 15 F. App'x. 431, 436 (9th Cir. 2001)(unpublished)(indicating that the district court's jury instructions "properly tracked the language of the statute" and holding "[a] jury may convict on a finding of any of the elements of a disjunctively defined offense, despite the grand jury's choice of conjunctive language in the indictment"); United States v. Poarch, 878 F.2d 1355, 1358 (11th Cir. 1989)(stating that, when a criminal statute provided for alternate means of violation, and the grand jury returned an indictment with conjunctive language, "the government obtained a more difficult indictment than it was required to by the statute," and "the government need only show that one of those acts was committed in order to prove guilt").

Section 1951(a) contains disjunctive phrases that essentially create six functionally separate crimes: interference with commerce by robbery, interference with commerce by extortion, attempt to interfere with commerce by robbery, attempt to interfere with commerce by extortion, conspiracy to interfere with commerce by robbery, and conspiracy to interfere with commerce by extortion. Section 1951(b) which further defines 'robbery' for purposes of § 1951(a) is also disjunctive, but it does not contain alternative elements on which a jury must agree. Therefore, the Court will assume that the Hobbs Act is divisible but that Hobbs Act robbery is indivisible.

Harrison Johnson v. United States, No. 2:12-cr-00336-JAD-CWH, 2018 WL 3518448, at *3 (D. Nev. July 19, 2018)(Dorsey, J.).

The Court concludes, however, that Hobbs Act robbery is divisible.  Specifically, the statute is divisible, on the one hand, between substantive Hobbs Act robbery and aiding and abetting Hobbs Act robbery, and, on the other hand, conspiracy to commit Hobbs Act robbery, because the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  United States v. Pam, 867 F.3d at 1203 (citing Descamps v. United States, 133 S. Ct. at 2281).  Specifically, conspiracy to commit Hobbs Act robbery includes elements that substantive or attempted Hobbs Act robbery do not.  A conviction under § 1951(b)(1) for substantive robbery requires a finding of "actual or threatened force, or violence, or fear of injury, immediate or future."  18 U.S.C. § 1951(b)(1).  Under § 1951(a), conspiracy to commit Hobbs Act robbery requires: (i) that two or more persons agreed to commit Hobbs Act robbery; (ii) the defendant knew the conspiracy's "essential objectives"; (iii) the defendant knowingly and voluntarily "took part in the conspiracy"; and (iv) "the conspirators were interdependent."  United States v. Wright, 506 F.3d 1293, 1297-98 (10th Cir. 2007). The Hobbs Act therefore "list[s] elements in the alternative, and thereby define[s] multiple crimes," rendering it a divisible statute.

Mathis v. United States, 136 S. Ct. at 2249.  The Court therefore applies the modified categorical

approach.[9]

_____

[9]On July 2, 2020, Eccleston submitted a handwritten addendum to the Motion in which he asserts, contrary to the Motion, that Hobbs Act robbery is not divisible, and so the Court must apply the categorical approach.  See Addendum to 18 USC 2255(f)(3) at 1-2, filed July 2, 2020 (Doc. 28("First Addendum").  Eccleston argues that his "underlying predicate offense contained a single, indivisible set of elements, and that the "structural integrity of the statute 18 U.S.C. § 1951 and the textual connotations themselves prove that it is an 'indivisible statute.'"  Addendum at 1 (quoting Motion at 4).  As the Court has discussed, however, conspiracy to commit Hobbs Act robbery involves elements that substantive, attempted, or aiding and abetting Hobbs Act robbery do not contain.  See Mathis v. United States, 136 S. Ct. at 2249.  The Hobbs Act contains creates six functionally separate crimes: interference with commerce by robbery, interference with commerce by extortion, attempt to interfere with commerce by robbery, attempt to interfere with commerce by extortion, conspiracy to interfere with commerce by robbery, and conspiracy to interfere with commerce by extortion.  See 18 U.S.C. § 1951(a).

In the First Addendum, Eccleston also raises, for the first time, an assertion that the Indictment's Counts V and VI violate his rights under the Double Jeopardy Clause of the Fifth Amendment to the Constitution.  See Addendum at 6.  This argument lacks a basis in the applicable law.  The Double Jeopardy Clause often comes up in the context of multiplicity -- when a single indictment charges multiple offenses covering the same act or behavior.  The Tenth Circuit's "jurisprudence establishes that multiplicitous sentences violate the Double Jeopardy Clause." United States v. McCullough, 457 F.3d 1150, 1162 (10th Cir. 2006)(internal quotation marks omitted).  "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." United States v. McCullough, 457 F.3d at 1162 (quoting United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997)).  "Although multiplicity is not fatal to an indictment, multiplicitous counts which may result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense."  United States v. McCullough, 457 F.3d at 1162 (internal quotation marks omitted).  This test does not apply, however, "where Congress has authorized punishments which would otherwise be inappropriately cumulative." United States v. Gibbons, 994 F.2d 299, 301 (6th Cir. 1993).  See Whalen v. United States, 445 U.S. 684, 688 (1980).  Section 924(c) is such an instance, as a section 924(c) charge necessarily is predicated upon a crime of violence.  See, e.g., United States v. Gibbons, 994 F.2d at 301.  Courts have thus held repeatedly that a § 924(c) conviction and sentence in addition to an underlying crime of violence's conviction and sentence does not violate the Double Jeopardy Clause, because Congress expressly provided punishment for a § 924(c) violation in addition to the punishment for the underlying crime of violence.  See, e.g., United States v. Dowd, 451 F.3d 1244, 1252 (11th Cir. 2006) United States v. Davis, 306 F.3d 398, 418 (6th Cir. 2002); United States v. Singleton, 16 F.3d 1419 (5th Cir. 1994); United States v. Sturmoski, 971 F.2d 452, 461 (10th Cir. 1992).  The Tenth Circuit has expressly concluded that, where a defendant is charged with two Hobbs Act violations in the same indictment and convicted of each offense, each conviction "may serve as a predicate offense for a § 924(c) violation."  United States v. Morris,

The Court pauses to note that it agrees with the parties that conspiracy to commit Hobbs Act robbery is not categorically a crime of violence. A conviction under § 1951(b)(1) for substantive robbery requires a finding of "actual or threatened force, or violence, or fear of injury, immediate or future." 18 U.S.C. § 1951(b)(1). Substantive Hobbs Act robbery under § 1951(b)(1) thus qualifies as a crime of violence under § 924(c)(3)(A), because substantive Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). Courts thus generally agree that substantive

---

247 F.3d 1080, 1084 (10th Cir. 2001). Accordingly, Count V and Count VI do not violate Eccleston's rights under the Double Jeopardy Clause.

     Eccleston also asserts, in a separate filing, that Count V does not charge a "de minimis" effect on interstate commerce, and so Count V "could only have been premised on conspiracy or proof that a successful completion of the scheme would have affected (interstate) commerce." Addendum to Pending 18 USC 2255 at 2, filed July 2, 2020 (Doc. 29)("Second Addendum")(emphasis in Second Addendum). Conspiracy to commit Hobbs Act robbery requires proof that the completed crime would have affected interstate commerce, while substantive Hobbs Act robbery requires proof of an actual effect on interstate commerce. See, e.g., 18 U.S.C. § 1951(a); United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001)("Unlike a conspiracy charged under the Hobbs Act, which only requires proof that defendants' scheme would have affected interstate commerce, a substantive Hobbs Act violation requires an actual effect on interstate commerce."). Eccleston is not correct, however, that "there is no 'de minimis' affect on (interstate) commerce in Count 5," because the Indictment's Count V charges Eccleston with affecting, delaying, and obstructing "the movement of article and commodities in commerce, by robbery as that term is defined in" § 1951. Indictment ¶ 5, at 3. Count V also charges that Eccleston "did unlawfully take and obtain personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from" Kuepers. Indictment ¶ 5, at 3-4. Accordingly, Count V charges an actual effect on interstate commerce. The Tenth Circuit has "repeatedly held that the government need only show a de minimis effect on interstate commerce to prove a Hobbs Act violation[.]" United States v. Morris, 247 F.3d 1080, 1087 (10th Cir. 2001). As Judge Hansen noted in addressing this same argument, Henkemeyer and Kuepers "were tourists from Oregon," and so were "travelers and hence qualify as 'persons in commerce.'" Memorandum Opinion and Order at 7, filed October 4, 1995 (Cr. Doc. 44)("Jurisdictional MOO")(quoting United States v. Lopez, 514 U.S. 549, 558 (1995)). The robbery that Count V charges deprived Henkemeyer and Kuepers of their "personal property that had been using in interstate commerce, probably essential to their travel, such as wallets and credit cards." Jurisdictional MOO at 7. Accordingly, the arguments that Eccleston raises in his supplemental briefing do not change the outcome and his prosecution under Count V is constitutional.

Hobbs Act robbery is a "crime of violence" as § 924(c)(3)(A) defines.  United States v. Myers, 786 F. App'x 161, 162 (10th Cir. 2019)(rejecting a claim under United States v. Davis, because Hobbs Act robbery is a violent felony under § 924(c)'s elements clause).  See United States v. Melgar-Cabrera, 892 F.3d 1053 (holding that Hobbs Act robbery is categorically a crime of violence for § 924(e)'s purposes after Johnson v. United States).  But see United States v. Walker, 314 F. Supp. 3d 400, 416 (E.D.N.Y. 2018)(Weinstein, J.)(concluding that Hobbs Act robbery does not satisfy § 924(e)'s crime-of-violence requirement, because, Hobbs Act robbery includes as potential elements violence or threat of violence against property, while common-law robbery requires violence or threat of violence against the victim's person).  Further, aiding and abetting Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)(3)(A).  See, e.g., United States v. Richardson, 948 F.3d 733, 741-42 (6th Cir. 2020)("There is no distinction between aiding and abetting the commission of a crime and committing the principal offense. . . .  [To] sustain a conviction under § 924(c), it makes no difference whether Richardson was an aider and abettor or a principal [in a Hobbs Act robbery].").

Conspiracy to commit Hobbs Act robbery, alternatively, is not categorically a crime of violence.  See, e.g., United States v. Brown, 942 F.3d at 1075 (collecting cases and stating: "[L]ike our sister Circuits, we conclude that conspiracy to commit Hobbs Act robbery does not qualify as a 'crime of violence,' as defined by § 924(c)(3)(A)"); United States v. Barrett, 937 F.3d 126, 130 (2d Cir. 2019)(same).  Conspiracy to commit Hobbs Act robbery is not categorically a crime of violence for two reasons: (i) conspiracy to commit Hobbs Act robbery requires elements that substantive Hobbs Act robbery does not require, and does not necessarily require violence; and (ii) unlike attempted Hobbs Act robbery, conspiracy does not merge with the complete offense.  Conspiracy to commit Hobbs Act robbery is not categorically a crime of violence, because a

conspiracy's elements focus on a defendant's agreement to commit a crime but do not require proof of a violent act.  Under § 1951(a), conspiracy to commit Hobbs Act robbery requires: (i) that two or more persons agreed to commit Hobbs Act robbery; (ii) the defendant knew the conspiracy's "essential objectives"; (iii) the defendant knowingly and voluntarily "took part in the conspiracy"; and (iv) "the conspirators were interdependent."  United States v. Wright, 506 F.3d 1293, 1297-98 (10th Cir. 2007).  Conspiracy to commit Hobbs Act robbery, therefore, "may manifest itself in any one of countless non-violent ways."  Brown v. United States, 942 F.3d at 1075.  Substantive Hobbs Act robbery, however, "can only be satisfied by violent force."  United States v. Melgar-Cabrera, 892 F.3d at 1065.  Similarly, substantive Hobbs Act robbery, and aiding and abetting or attempted Hobbs Act robbery, do not have as an element that the defendant and another agreed to commit Hobbs Act robbery.  See, e.g., Iannelli v. United States, 420 U.S. 770, 777 (1975)(Powell, J.)("Nonetheless, agreement remains the essential element of [conspiracy], and serves to distinguish conspiracy from aiding and abetting which, although often based on agreement, does not require proof of that fact, . . . and from other substantive offenses as well."). "When properly charged, the crime of aiding and abetting contains different elements than the crime of conspiracy."  United States v. Buchanan, 830 F.2d 146, 149 (10th Cir. 1987).  While conspiracy is an "agreement among the conspirators to commit the offense, attended by an act of one or more of the conspirators to effect the object of the conspiracy," United States v. McMahon, 562 F.2d 1192, 1196 (10th Cir. 1977), aiding and abetting requires that a defendant "associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seeks by his action to make it succeed,'" United States v. Harris, 441 F.2d 1333, 1336 (10th Cir. 1971)(internal quotation marks omitted).  "To be sure, these two offenses contain common elements; however, they are not the same.  While the agreement of two people is necessary for

conspiracy, it is not necessary for aiding and abetting." <u>United States v. Buchanan</u>, 830 F.2d at 149. Finally, unlike attempted Hobbs Act robbery -- the statute's other disjunctive robbery offense -- conspiracy does not merge with completed, substantive Hobbs Act robbery. <u>See</u> <u>Iannelli v. United States</u>, 420 U.S. at 777 (noting that "the conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act"). Accordingly, conspiracy to commit Hobbs Act robbery can therefore serve as a predicate for a § 924(c) conviction only under the now-defunct residual clause.

## II.   ECCLESTON WAS CONVICTED OF A CRIME OF VIOLENCE IN COUNT V, <u>SO COUNT VI RESTS ON A VALID PREDICATE.</u>

"[T]he modified approach serves -- and serves solely -- as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." <u>Mathis v. United States</u>, 136 S. Ct. at 2253. "The modified categorical approach allows a court to peer around the statute of conviction and examine certain record documents underlying the defendant's prior offense[.]" <u>United States v. Titties</u>, 852 F.3d at 1266. Courts may "consult[] the trial record -- including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." <u>Johnson v. United States</u>, 559 U.S. at 144. "Although the record may reveal factual details of the offense, '[a] court may use the modified approach only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction.'" <u>United States v. Titties</u>, 852 F.3d at 1266 (quoting <u>Descamps v. United States</u>, 133 S. Ct. at 2293).

### A.   ECCLESTON WAS CONVICTED OF SUBSTANTIVE HOBBS ACT ROBBERY.

The Indictment's Count V provides:

On or about December 15, 1994, in Bernalillo County, . . . [Eccleston and Martinez] did unlawfully obstruct, delay and affect, and attempt and conspire to obstruct, delay and affect commerce . . . and the movement of articles and commodities in such commerce, by robbery as that term is defined in [§ 1951], in that [Eccleston and Martinez] did unlawfully take and obtain personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from [Kuepers] against her will by means of actual and threatened force, violence, and fear of injury, immediate and future, to her person and a person in her company, that is, the treat that if Kuepers would not give [Eccleston and Martinez her] property, the defendants, [Eccleston and Martinez], were going to injure or kill [Kuepers and Henkemeyer.]  In violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2.

Indictment ¶ 5, at 3-4.  Although the Indictment refers to conspiracy, the Indictment alleges substantive Hobbs Act robbery.  The Indictment alleges that Eccleston "did unlawfully take and obtain personal property" by means of "actual and threatened force, violence, and fear of injury[.]" Indictment ¶ 5, at 3-4.  The Indictment makes no mention of any agreement between Eccleston and Martinez.  An indictment is "generally sufficient if it sets forth the offense in the words of the statute so long as the statute <u>adequately states the elements of the offense</u>."  <u>United States v. Salazar</u>, 720 F.2d 1482, 1486 (10th Cir. 1983), <u>cert</u>. <u>denied</u>, 469 U.S. 1110 (1985)(emphasis added).  The Indictment refers to conspiracy when tracking § 1951's general language, but makes no mention of the elements necessary for a conspiracy conviction.  <u>See</u>, <u>e.g.</u>, <u>United States v. Salahuddin</u>, 765 F.3d 329, 341 (3d Cir. 2014)(noting that the essential element of Hobbs Act conspiracy is agreement, and that actually obstructing, delaying, or affecting commerce is unnecessary); <u>United States v. Warledo</u>, 557 F.2d 721, 729 (10th Cir. 1977)("Under the conspiracy clause of Section 1951 the intent that must be proven by the government is an intent to join and cooperate in the illegal activity proscribed by that section, <u>i.e.</u> a conspiracy to obstruct commerce by extortion."); <u>United States v. Amato</u>, 495 F.2d 545, 550 (5th Cir. 1974)(holding that, although there was evidence of violent robbery, "the record is devoid of any element of intent to join in an extortion conspiracy in violation of the Hobbs Act. . . .  In sum, we find that as a matter of law the

evidence against Brunello on the issue of intent to join, or even knowledge of, the conspiracy was insufficient to submit the case to the jury.").  That the Indictment does not allege sufficiently the elements necessary to convict Eccleston of conspiracy to commit Hobbs Act robbery is strong evidence that Eccleston was not convicted of conspiracy.[10]

> Moreover, in the Plea Agreement, Eccleston admits that, on December 15, 1994, he
>
> did unlawfully obstruct, delay and affect, and attempt and conspire to obstruct, delay and affect commerce as that term is defined in [§ 1951], and the movement of articles and commodities in such commerce, by robbery as that term is defined in [§ 1951], in that [Eccleston], did unlawfully take and obtain personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from the person and in the presence of . . . Kuepers against her will by means of actual and threated force, violence, and fear of injury, immediate and future, to her person and a person in her company, that is, the threat that if [Kuepers] would not give the defendant, [Eccleston], property, the defendant, [Eccleston], was going to injure or kill [Henkemeyer and Kuepers], in violation of 18 U.S.C. §§ 1951(a) and 2.

Plea Agreement ¶ 7.c., at 4-5.  Although Eccleston mentions the word "conspiracy," he admits to substantive Hobbs Act robbery.  Plea Agreement § 7.c., at 4.  Eccleston does not refer to a conspiracy's constituent elements, but rather substantive Hobbs Act robbery's constituent elements.  See United States v. Melgar-Cabrera, 892 F.3d at 1064-65; United States v. Addonizio, 451 F.2d 49, 59 (3d Cir. 1971)("The statute requires only (1) that the defendants induce their victims to part with property, (2) that they do so through the use of fear, and (3) that, in so doing,

---

[10]As noted in Section I, supra, Eccleston avers that the Indictment is duplicitous and charges Eccleston with "three separate crime: (1) substantive Hobbs Act robbery, (2) attempt to commit Hobbs Act robbery, and (3) conspiracy to commit Hobbs Act robbery." Motion at 4. This statement is the first instance in which Eccleston has made this assertion. Although not relevant to ruling on the Motion, see Mathis v. United States, 136 S. Ct. at 2253 ("At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under law."), that Eccleston did not initially challenge Count V as duplicitous in 1996 suggests that, at the time, the parties understood the Indictment as alleging substantive Hobbs Act robbery and not conspiracy to commit Hobbs Act robbery.

they adversely affect interstate commerce."). Most importantly, the Indictment and the Plea Agreement's structure suggest strongly that Eccleston was charged with and admitted to substantive Hobbs Act robbery. Both documents begin by incorporating § 1951(a)'s entire, general language, and conclude with specific language that is particular to substantive Hobbs Act robbery and not to conspiracy to commit Hobbs Act robbery. See Indictment ¶ 5, at 3-4; Plea Agreement ¶ 7.c., at 4-5.

The post-plea record also gives no support to Eccleston's contention that he was convicted of conspiracy to commit Hobbs Act robbery. The PSR refers to Count V as "Interference with Commerce by Threat of Violence" and applies U.S.S.G. § 2B3.1 (1995) to calculate a base offense level of 20 for Count V. PSR ¶ 33, at 8. See PSR ¶ 24, at 6 (providing that the USPO used the 1995 edition of the Guidelines). The PSR includes Eccleston's statement in which he accepts responsibility. See PSR ¶¶ 20-23, at 6. In this statement, Eccleston describes the elements of substantive Hobbs Act robbery rather than of conspiracy to commit Hobbs Act robbery, because Eccleston discusses receiving Kuepers' property and fleeing, and not any agreement with Martinez to do these things. See PSR ¶¶ 21-22, at 6.

The Plea Hearing colloquy similarly refers specifically to substantive Hobbs Act robbery and not to conspiracy to commit Hobbs Act robbery. After ensuring that Eccleston reviewed and understood the Plea Agreement, Judge Hansen stated:

> [T]he government has an obligation to prove . . . that on or about December 15th, 1994, in Albuquerque, . . . New Mexico, that you . . . did unlawfully, in Count V, obstruct, delay, and affect and attempt and conspire to delay, and affect commerce as that term is defined in 18 U.S. Code, Section 1951, and the movement of articles and commodities in such commerce by robbery, as that term is defined therein that you did unlawfully take and obtain personal property consisting of jewelry, personal checks, a purse, a wallet, a camera, and credit cards from the person and in the presence of Karen Kuepers against her will by means of actual and threatened force, violence, and fear of injury, immediate and future, to her person and a person

> in her company, that is, the threat that if Karen Kuepers did not give defendant property, you were going to injure or kill her and David Henkemeyer, and in Count VI that you did use and carry a firearm made from a Remington Shotgun . . . , which weapon as modified has a barrel of less than 18 inches in length, during and in relation to a crime of violence for which you may be prosecuted in a court of the United States, namely, the charge in Count V that I have reviewed with you.

Plea Tr. at 10:10-11:20 (Hansen, J.).  Eccleston responded that, after the carjacking, the car did not have any gas, so he

> went to another motel, and that's where I got out with a pistol and held up a lady and a guy and asked them for the guy's wallet and the lady's purse and -- but I didn't have a Remington shotgun in my possession as it says here.  I had a pistol, an automatic pistol.  And that's what happened.  That's what I'm pleading to.

Plea Tr. at 12:10-15 (Eccleston).  Judge Hansen then asked Eccleston if he "did take, then, the personal property from the two people at the second motel?"  Plea Tr. at 13:19-20 (Hansen, J.). Eccleston responded affirmatively.  See Plea Tr. at 13:22 (Eccleston).  In this exchange, there is no discussion of an agreement between Eccleston and Martinez.  Both Judge Hansen and Eccleston refer to substantive Hobbs Act robbery, which would have been superfluous had Eccleston pled only to Hobbs Act robbery.  See United States v. Smith, 838 F.2d 436, 439 (10th Cir. 1988)("When the language of the indictment goes beyond alleging the elements of the offense, it is mere surplusage and such surplusage need not be proved.").

Most importantly, the United States said that it could prove at trial that, about a half-hour after the carjacking,

> two Oregon residents, . . . Kuepers and . . . Henkemeyer, were robbed at gun point in the parking lot of another motel.  Ms. Kuepers had an individual identified as Mr. Martinez, Mr. Eccleston's co-defendant, come up to her, point a sawed-off shotgun at her, chamber a[ ]round once again and take her purse, telling her to give him her purse.  The second individual, who, in this case, was positively identified as Mr. Eccleston, went up to Ms. Kuepers' companion, Mr. Henkemeyer, took his wallet at gunpoint at the same time that his companion and co-defendant, Mr. Martinez, got back into the white rental car and drove off.

Plea Tr. at 14:24-15:11 (Kimball).  The United States continued: "For all of these reasons, the United States contends that we could prove that Mr. Eccleston either committed or aided and abetted in the commission of these crimes within the meaning of Section 2 of Title 18, United States Code."  Plea Tr. at 16:15-19 (Kimball)(emphasis added).  Eccleston agreed with the United States' characterization of the offenses and did not object to the United States' omission of any reference to a conspiracy offense or to conspiracy elements.  See Plea Tr. at 16:20-22 (Hansen, J; Eccleston).  After the United States characterized the offense as either substantive Hobbs Act robbery or aiding and abetting Hobbs Act robbery, Eccleston pled guilty to Counts I, II, V, and VI.  See Plea Tr. at 16:23-25 (Hansen, J.; Eccleston).  After the United States and Eccleston firmly described substantive and Hobbs Act robbery, and not conspiracy to commit Hobbs Act robbery, Judge Hansen then accepted Eccleston's plea.  See Plea Tr. at 17:9 (Hansen, J.).

The record thus does not support that Eccleston was convicted of conspiracy to commit Hobbs Act robbery and instead supports that Eccleston was convicted of substantive Hobbs Act robbery.  Eccleston contends, however, that the United States

> errs by doing what the Supreme Court repeatedly admonished against -- looking at the Shepard[ v. United States, 544 U.S. 13, 2005),] documents, not to see if they set forth the *elements* of the crime of conviction, but to the facts underlying Mr. Eccleston's convictions to see if they suffice to establish a substantive Hobbs Act robbery.

Reply at 4.  The Court disagrees with Eccleston's contention.  Section 1951(a) makes it a crime to "obstruct[ ], delay[ ], or affect[ ] commerce . . . by robbery[.]"  18 U.S.C. § 1951(a).

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1).  Although the Indictment includes factual allegations, the Court looks at the Indictment to determine whether it alleges substantive Hobbs Act robbery's elements. Similarly, although the Plea Agreement, the Plea Hearing, and the PSR all refer to the facts of Eccleston's offense, the Court looks at the record "only to determine which alternative element in a divisible statute formed the basis of the defendant's conviction."  United States v. Titties, 852 F.3d at 1266.  The Court looks at the record to determine whether Eccleston "necessarily admitted" to the elements of substantive Hobbs Act robbery.  Shepard v. United States, 544 U.S. at 26.  To do so, the Court examines whether, on the sentencing record, Eccleston possibly admitted to and was convicted of conspiracy to commit Hobbs Act robbery.  Eccleston notes that "[a]ll of the pertinent record documents . . . reference conspiracy to commit Hobbs Act robbery."  Reply at 4. Eccleston also avers that, in discussing the Indictment's factual bases at the plea colloquy, Eccleston discusses Martinez, "and the interaction and interdependence between" Eccleston and Martinez, which "might" support conspiracy to commit Hobbs Act robbery.  Reply at 5.  This approach, however, relies on the facts of Eccleston's offense, rather than on the offense's elements, which the modified categorical approach prohibits.  See Mathis v. United States, 136 S. Ct. at 2253-54.  Further, even relying on those facts, the record shows that Eccleston was not possibly convicted of conspiracy to commit Hobbs Act robbery, because none of the relevant documents contains the necessary facts for a conspiracy conviction, whereas all contain the necessary facts for substantive Hobbs Act robbery, or aiding and abetting Hobbs Act robbery, both of which are crimes of violence.  See United States v. Melgar-Cabrera, 892 F.3d at 1064.

**B.      ECCLESTON IS NOT ENTITLED TO RELIEF UNDER HIS ASSERTED TEST, BECAUSE IT IS NOT POSSIBLE THAT HE PLED GUILTY TO HOBBS ACT ROBBERY CONSPIRACY.**

Although the Court concludes that Eccleston holds the burden to demonstrate that it is more likely than not that Count VI rests on an invalid predicate, see supra n.7, at 25, Eccleston cannot prevail under his asserted test. Eccleston contends that the Court must vacate his sentence for Count VI if the Court cannot determine with certainty whether he was convicted of a crime of violence in Count V. See Reply at 1-2. Eccleston cites Shepard v. United States for the proposition that Taylor v. United States requires that courts determine with "'certainty'" that a defendant's predicate offense is a crime of violence. Reply at 4 (quoting Shepard v. United States, 544 U.S. at 21 (citing generally Taylor v. United States)). The Court concludes that the record establishes with certainty that his predicate offense is a crime of violence.

Eccleston cites United States v. Horse Looking, a case from the United States Court of Appeals for the Eighth Circuit, for the proposition that, if the reviewing court cannot determine with certainty that Eccleston's Count V conviction rests on a crime of violence, the reviewing court must vacate Eccleston's sentence in Count VI. See Motion at 6; Reply at 6. In United States v. Horse Looking, the defendant was charged with possessing a firearm, and the United States alleged that the defendant had been previously convicted of a "'misdemeanor crime of domestic violence.'" United States v. Horse Looking, 828 F.3d at 746 (quoting 18 U.S.C. § 922(g)(9)). Section 922, in relevant part, defined "misdemeanor crime of domestic violence" as a crime that has as an element "the use or attempted use of physical force, or the threatened use of a deadly weapon." 828 F.3d at 746. See 18 U.S.C. §§ 921(a)(33)(A)(ii), 922(g)(9). On direct appeal, the defendant argued that his predicate conviction -- for South Dakota simple-assault domestic violence -- was not a "misdemeanor crime of domestic violence" as §§ 921 and 922 require. 828

F.3d at 746.  The South Dakota statute contained five divisible provisions, and the Eighth Circuit concluded that the defendant was charged with three of them.  See 828 F.3d at 747-48.  The South Dakota indictment charged that the defendant "[a]ttempt[ed] by physical menace or credible threat to put another in fear of imminent bodily harm, with or without the actual ability to harm the other person," or "[i]ntentionally cause[d] bodily injury to another which does not result in serious bodily injury."  828 F.3d at 746-47.  The parties agreed that the latter charge, but not the former charge, met the federal definition of a misdemeanor crime of violence.  See 828 F.3d at 747.

Because the South Dakota statute is divisible, the Eighth Circuit applied the modified categorical approach and looked at the defendant's South Dakota sentencing documents to determine which crime the defendant had committed.  See 828 F.3d at 747.  Those documents, however, showed that the defendant was convicted for violating the statute as a whole without identifying a particular subsection, so the Eighth Circuit examined the plea colloquy.  See 828 F.3d at 747.  There, the defendant said that he and his wife "got into an argument and she became physical and she cut me and I pushed her . . . [and] she fell down."  828 F.3d at 748.  The defendant's attorney further stated that the defendant's wife "had some abrasions on her ankle or knee."  728 F.3d at 748.  The Eighth Circuit concluded that the sentencing record supported convictions for either subsection, only one of which is a misdemeanor crime of violence as federal law defines.  See 728 F.3d at 748.  Because the Eighth Circuit also could not "say that convictions under the two alternatives are mutually exclusive," it concluded that the United States could not prove with certainty that the defendant had violated § 922(g)(9). 828 F.3d at 748.  That the defendant "could have" been convicted of a valid predicate offense, the Eighth Circuit held, did not meet the Supreme Court's "'demand for certainty'" in applying § 922(g)'s crime-of-violence predicate.  828 F.3d at 748-49 (quoting Mathis v. United States, 136 S. Ct. at 2256-57 ).

United States v. Horse Looking does not command Eccleston's requested standard of review. As a general matter, the Eighth Circuit does not bind the Court. Further, United States v. Horse Looking involves a direct appeal and not review of a § 2255 petition, and thus the United States bore the burden to demonstrate each federal element beyond a reasonable doubt. Cf. Cagle v. Ciccone, 368 F.2d 183, 184 (8th Cir. 1966)(noting that, in habeas cases, the petitioner holds the burden of proof and persuasion). United States v. Driscoll's reasoning, discussed supra, that a § 2255 petitioner holds the burden to demonstrate that it is more likely than not that a conviction rests on an invalid predicate, see 892 F.3d at 1135 n.5, thus governs this case, see United States v. Rodella, 2020 WL 406389, at *11.

Moreover, even under Eccleston's asserted test, the record meets the certainty requirement. As discussed, the Indictment's mere mention of conspiracy, when tracking § 1951(a)'s language, is not enough to demonstrate that Eccleston was possibly convicted of conspiracy to commit Hobbs Act robbery, because the Indictment's more specific language refers only to substantive Hobbs Act robbery. See Indictment ¶ 5, at 4-5. Accordingly, unlike in United States v. Horse Looking, here the Indictment and the sentencing record "exclude the possibility" that Eccleston was convicted of conspiracy to commit Hobbs Act robbery. United States v. Horse Looking, 828 F.3d at 748.

Eccleston relies on another out-of-Circuit case, United States v. Chapman, to assert that the Court must presume that Eccleston was convicted of the least serious offense that Count V charges. See Motion at 7. In United States v. Chapman, the United States Court of Appeals for the Fourth Circuit, on direct appeal, reviewed a criminal defendant's constitutional challenge, under the Second Amendment to the Constitution of the United States of America, to § 922(g)(8), which prohibits a person who is subject to a domestic violence protective order from possessing a

firearm under certain circumstances.  See United States v. Chapman, 666 F.3d at 223.  The Fourth

Circuit's analysis thus focused primarily on § 922(g)(8)'s constitutionality.  See 666 F.3d at 225-

28.  The Fourth Circuit stated, however, that, "when a defendant pleads guilty to a formal charge

in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is

that the defendant admits to the least serious of the disjunctive statutory conduct."  666 F.3d at

228.

       United States v. Chapman does not compel the presumption that Eccleston necessarily pled

guilty to conspiracy to commit Hobbs Act robbery.  First, United States v. Chapman does not

require Eccleston's asserted test.  That case involves a direct appeal challenging a statute's

constitutionality, not for vagueness, as Eccleston does here, but rather as an impermissible

restriction on the right to bear arms.  See United States v. Chapman, 666 F.3d at 223.  As with

United States v. Horse Looking, the Fourth Circuit employed a different standard of review to

determine the defendant's predicate offense.  See United States v. Chapman, 666 F.3d at 227

("Because Chapman's Second Amendment challenge is an as-applied one, we must determine to

which statutory subsection Chapman pleaded guilty -- § 922(g)(8)(C)(i) or § 922(g)(8)(C)(ii).").

It was in this context that the Fourth Circuit opined that, "when a defendant pleads guilty to a

formal charge in an indictment which alleges conjunctively the disjunctive components of a

statute, the rule is that the defendant admits to the least serious of the disjunctive statutory

conduct."  United States v. Chapman, 666 F.3d at 228.  Accordingly, the Fourth Circuit's direct-

appeal reasoning does not apply where a § 2255 petitioner holds the burden to demonstrate that

his or her conviction rests on an invalid predicate.  Cf. United States v. Driscoll, 892 F.3d at 1135

n.5 ("[A] second § 2255 movant must show with actual evidence that the sentencing court, more

likely than not, relied on the residual clause.").  Most importantly, the Court need not resort to the

inference that <u>United States v. Chapman</u> provides.  While the Indictment "alleg[es] conjunctively the disjunctive components of a statute," Eccleston nonetheless necessarily pled guilty to a crime of violence in violation of § 924(c).  <u>United States v. Chapman</u>, 666 F.3d at 228.  While the Indictment refers conjunctively to § 1951(a)'s disjunctive components in Count V's prefatory phrase, Count V specifies that Eccleston violated § 1951(a)'s substantive provisions.  <u>See</u> Indictment ¶ 5, at 3-4 (alleging that Eccleston violated § 1951(a), because he "did unlawfully take and obtain personal property").  Moreover, Count VI refers not to conspiracy to commit Hobbs Act robbery in Count V, but rather to "Interference with Commerce by Threats of Violence, as Charged in Count V[.]"  Indictment ¶ 6, at 4.  <u>Cf.</u> <u>Ferone v. United States</u>, No. 512CR00037KDBDCK3, 2020 WL 520945, at *5 n.2 (W.D.N.C. Jan. 31, 2020)(Bell, J.)(rejecting a defendant's similar reliance on <u>United States v. Chapman</u>, concluding that the indictment's phrasing did not render it impossible to determine whether the defendant pled guilty to a crime of violence and stating that the defendant's argument "strains logic and grammatical norms").  Accordingly, although the Court disagrees with Eccleston's stated test, Eccleston does not satisfy that test, because it is not possible that Eccleston pled guilty to and was sentenced for conspiracy to commit Hobbs Act robbery.

**IT IS ORDERED** that: (i) the Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, filed December 20, 2019 (Doc. 1), is denied; and (ii) this case is dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd Coberly
Coberly Law Office
Santa Fe, New Mexico

--and--

Carter B. Harrison, IV
Harrison & Hart, LLC
Albuquerque, New Mexico

      *Attorneys for the Petitioner/Defendant*

John C. Anderson
  United States Attorney
David M. Walsh
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Respondent/Plaintiff*